# United States Court of Appeals for the Federal Circuit

---

**A123 SYSTEMS, INC.,**
*Plaintiff-Appellant,*

v.

**HYDRO-QUEBEC,**
*Defendant-Appellee.*

---

2010-1059

---

Appeal from the United States District Court for the District of Massachusetts in Case No. 06-CV-10612, Judge Joseph L. Tauro.

---

Decided: November 10, 2010

---

WAYNE L. STONER, Wilmer Cutler Pickering Hale and Dorr LLP, of Boston, Massachusetts, argued for plaintiff-appellant. With him on the brief were CHRISTOPHER R. NOYES and CHRISTOPHER M. STRAW.

DARRYL J. ADAMS, Baker Botts LLP, of Austin, Texas, argued for defendant-appellee. With him on the brief were KEVIN J. MEEK and JAMES W. CANNON, JR.

---

Before LOURIE, BRYSON, and DYK, *Circuit Judges.*

LOURIE, *Circuit Judge.*

A123 Systems, Inc. ("A123") appeals from the final decision of the United States District Court for the District of Massachusetts denying A123's motion to reopen and dismissing its declaratory judgment action against Hydro-Quebec ("HQ"). *A123 Sys., Inc. v. Hydro-Quebec*, 657 F. Supp. 2d 276 (D. Mass. 2009). We affirm.

BACKGROUND

A123 filed suit in the District of Massachusetts on April 7, 2006, seeking a declaration of noninfringement and invalidity with respect to two patents, U.S. Patents 5,910,382 ("the '382 patent") and 6,514,640 ("the '640 patent") (collectively, "the patents in suit"), assigned to the Board of Regents, The University of Texas System ("UT") and licensed to HQ. Both patents are entitled, "Cathode Materials for Secondary (Rechargeable) Lithium Batteries," and both claim a genus of lithium-based cathode materials. Claim 1 of the '640 patent, the broadest representative claim, reads as follows:

1.    A cathode in a rechargeable electrochemical cell, said cell also comprising an anode and an electrolyte, the cathode comprising a compound of the ordered or modified olivine structure having the formula:

$$Li_xM_{1-(d+t+q+r)}D_dT_tQ_qR_r(XO_4)$$

wherein:

M is a cation of a metal selected from the group consisting of Fe, Mn, Ti, Ni or mixtures thereof;

D is a metal having a +2 oxidation state selected from the group consisting of $Mg^{2+}$, $Ni^{2+}$, $Zn^{2+}$, $Cu^{2+}$, and $Ti^{2+}$;

T is a metal having a +3 oxidation state selected from the group consisting of $Al^{3+}$, $Ti^{3+}$, $Cr^{3+}$, $Fe^{3+}$, $Mn^{3+}$, $Ga^{3+}$, $Zn^{3+}$, and $V^{3+}$;

Q is a metal having a +4 oxidation state selected from the group consisting of $Ti^{4+}$, $Ge^{4+}$, $Sn^{4+}$, and $V^{4+}$;

R is a metal having a +5 oxidation state selected from the group consisting of $V^{5+}$, $Nb^{5+}$, and $Ta^{5+}$;

X comprises Si, S, P, V, or mixtures thereof;

$0 \leq x \leq 1$; and

$0 \leq d, t, q, r \leq 1$, where at least one of d, t, q, and r is not 0.

On August 14, 2006, HQ moved to dismiss A123's declaratory judgment suit. HQ argued, *inter alia*, that UT was a necessary and indispensable party because, pursuant to UT and HQ's Patent License Agreement, UT had transferred to HQ less than all substantial rights in the patents in suit, granting HQ only an exclusive field-of-use license. HQ further alleged that UT could not be joined as a defendant based on its entitlement to Eleventh Amendment sovereign immunity. A month later, on September 11, 2006, HQ and UT jointly initiated an infringement suit against A123, among others, in the Northern District of Texas.

After A123 successfully requested a reexamination of both patents, the Texas action was stayed and the Massa-

chusetts court dismissed A123's declaratory judgment action without prejudice to either party to reopen within thirty days following the termination of the reexaminations. A123 filed a timely motion to reopen the case on June 11, 2008. HQ opposed the motion, arguing that reopening the case would be futile based on the arguments made in its earlier motion to dismiss.

On September 28, 2008, the district court denied A123's motion to reopen, yielding jurisdiction over A123's declaratory judgment suit to the later-filed suit in Texas in light of its conclusion that A123's first-filed action, if reopened, would be subject to imminent dismissal for failure to join a necessary party. *A123 Sys.*, 657 F. Supp. 2d at 279-80. Specifically, the district court held that, by granting HQ only a field-of-use license, UT had transferred less than all substantial rights in the patents in suit to HQ, making UT a necessary party to A123's suit under this court's prudential standing requirement. *Id.* (citing *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1278-79 (Fed. Cir. 2007)). The court then held that A123 could not join UT because UT had not waived Eleventh Amendment sovereign immunity in the Massachusetts court. *Id.* at 280-81. Nonetheless, the court remarked, A123 had an adequate remedy because UT has waived Eleventh Amendment immunity in the Northern District of Texas by filing suit for infringement in that district. *Id.* at 281.

A123 appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

### DISCUSSION

A123 advances multiple arguments on appeal. A123 first challenges the district court's determination that UT had not transferred all substantial rights in the patents in suit to HQ, and thus that UT was a necessary party to

A123's declaratory judgment suit. A123 also challenges the district court's decision that UT could not be joined because it had not waived Eleventh Amendment immunity in the Massachusetts district court. Finally, A123 argues that the district court failed to expressly determine whether UT, even if a necessary party, was also an indispensable party under Federal Rule of Civil Procedure 19 ("Rule 19"). We address each argument in turn.

## I. Necessary Party

Under long-standing prudential standing precedent, an exclusive licensee with less than all substantial rights in a patent, such as a field-of-use licensee, lacks standing to sue for infringement without joining the patent owner. *Int'l Gamco*, 504 F.3d at 1278-79; *see also Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891). In general, as we discuss below, an accused infringer must likewise join both the exclusive licensee and the patentee in a declaratory action because the patentee is a necessary party. *See Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1094 (Fed. Cir. 1998) ("Having found Geapag to be without standing for failing to join the patentee, it follows that the court lacks jurisdiction over Enzo's declaratory judgment claims under Fed. R. Civ. P. 19 for nonjoinder.").

A123 challenges the district court's conclusion that UT had not transferred all substantial rights in the patents in suit to HQ in light of what A123 casts as HQ's own actions and representations to the contrary. Specifically, A123 contends that in an earlier lawsuit to enforce the patents against third party Valence Technology, Inc. ("Valence") and in a letter threatening A123 with suit for infringement, HQ held itself out as an exclusive licensee of the technology claimed in the '382 and '640 patents and as having the right to sublicense the technology and to enforce the patents. A123 also argues that HQ's at-

tempted enforcement of the patents against Valence without joining UT similarly indicates that HQ had acquired all substantial rights in the patents from UT. According to A123, the district court failed to consider any of this evidence.

HQ responds that the district court did not commit clear error by finding, based on the declarations of HQ's General Counsel and UT's Associate Vice Chancellor, that HQ holds an exclusive license to some, but not all, fields of use under the patents in suit, mandating the legal conclusion that HQ holds less than all substantial patent rights. According to HQ, A123's selective quotes from a prior litigation do not show that HQ had acquired all substantial rights, but rather are consistent with a field-of-use license. Nevertheless, HQ asserts, even if statements made by HQ could be read as suggesting it had acquired all substantial rights, such statements cannot affect or diminish UT's actual retained rights in the patents.

We agree with HQ. Based on the evidence of record, the district court did not err in finding that HQ was a field-of-use licensee and thus in concluding that UT had not transferred all substantial rights to the patents to HQ. Both HQ's General Counsel, Pierre Gagnon, and UT's Associate Vice Chancellor testified to this effect. Specifically, Gagnon testified that HQ holds an exclusive license to two fields of use claimed in the patents in suit: (1) an exclusive license to manufacture, use, sell, import, and offer for sale rechargeable batteries with a *solid* electrolyte, gelled, plasticized or not plasticized, and (2) an exclusive and worldwide license to manufacture and sell lithium iron phosphate ("LiFePO$_4$") in bulk quantities for all applications, including, but not limited to, secondary batteries with polymer or liquid electrolytes. J.A. 246-47 (emphasis added). Gagnon further testified that

UT retained the right to license other parties in all other patented fields of use, including (1) the production, use, and sale of rechargeable batteries, including those with lithium manganese, lithium titanium, and lithium nickel cathode material, having a *liquid* electrolyte and (2) the *use* of lithium iron phosphate with liquid electrolytes. J.A. 247 (emphases added).

The representations by HQ on which A123 relies are consistent with HQ being a field-of-use licensee. HQ's first amended complaint in its lawsuit against Valence states that HQ obtained an "exclusive license to make, use and sell a significant portion of the field of technology described and claimed" in the patents in suit, including an "exclusive, worldwide license to manufacture LiFePO$_4$ and sell LiFePO$_4$ in bulk quantities for all applications of the technology," and that these rights "are exclusive even as against UT." J.A. 621-22. These statements unmistakably identify HQ's license as less than a complete grant of rights under the patents, even if an exclusive grant of certain rights. HQ states that it received an exclusive license to *a significant portion* of the field of technology, not *all* fields of technology described and claimed in the patents. HQ also qualifies its statement that it has exclusive rights to "all applications of the technology" as limited to one cathode compound, lithium iron phosphate (*i.e.*, not lithium manganese, titanium, or nickel phosphate). Similarly, in its letter accusing A123 of infringement, HQ uses the label "exclusive licensee," but it says nothing to indicate that its license is exclusive as to all fields of use. Accordingly, none of these statements contradicts Gagnon's testimony.

But even if HQ had held itself out as having all substantial rights in the patents, such a unilateral representation could not alter the UT's own rights in the patents. In determining ownership for purposes of standing, labels

given by the parties do not control. Rather, the court must determine whether the party alleging effective ownership has in fact received all substantial rights from the patent owner. *Waterman*, 138 U.S. at 256 ("Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions."); *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir. 2006) ("To determine whether an agreement to transfer rights to a patent at issue amounts to an assignment or a license, we must ascertain the intention of the parties and examine the substance of what was granted."). As such, even if HQ's earlier effort to sue Valence for infringement of the '382 and '640 patents without joining UT could be read as an assertion of all substantial rights, as A123 urges, it cannot alter the actual, and in this case limited, transfer of rights made to HQ by UT.

In a related argument, A123 claims that the district court could not have determined that UT had not transferred all substantial rights in the patent to HQ without examining HQ and UT's Patent License Agreement, as it alone is determinative of the rights transferred. A123 contends, therefore, that the district court abused its discretion in not granting A123's requested discovery of the Agreement. The record, however, does not reflect that A123 in fact requested such discovery. A123 points to a footnote in its September 11, 2006, opposition brief to HQ's motion to dismiss in which A123 states equivocally that "[i]*f* the Court deems further review of the agreement to be relevant to this motion, A123 *would* respectfully request prompt discovery of it." J.A. 436 (emphases added). Because A123 never requested discovery of the Agreement then or at any time prior to the district court's ruling on A123's motion to reopen, its argument that the

district court erred in not permitting discovery is waived. *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("If a litigant seeks to show error in a trial court's overlooking an argument, it must first present that argument to the trial court.").

In summary, we hold that because HQ had acquired less than all substantial rights in the patents in suit, UT is a necessary party to A123's declaratory judgment action. *See Enzo*, 134 F.3d at 1094; *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875-76 (Fed. Cir. 1991).

## II.   Eleventh Amendment Sovereign Immunity

Although a necessary party, the district court held that UT could not be joined as a defendant because it had not waived Eleventh Amendment sovereign immunity in the Massachusetts suit. *A123 Sys.*, 657 F. Supp. 2d at 280-81.  We review the district court's decision on Eleventh Amendment immunity *de novo*.  *Regents of Univ. of New Mexico v. Knight*, 321 F.3d 1111, 1124 (Fed. Cir. 2003).

A123 does not dispute that UT is an arm of the State of Texas and is therefore entitled to Eleventh Amendment immunity.  *See Tegic Comm'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1339-40 (Fed. Cir. 2006).  Rather, A123 contends that UT waived its immunity from suit in this case when, on September 11, 2006, it filed suit against A123 for infringement of the same patents in Texas.  In support of its waiver argument, A123 cites *Genentech, Inc. v. Regents of University of California*, 143 F.3d 1446 (Fed. Cir. 1998), *vacated*, 527 U.S. 1031 (1999).

In response, HQ argues that UT's voluntary participation in the Texas infringement suit against A123 does not

constitute a retroactive waiver of its Eleventh Amendment immunity in this separate action. Specifically, HQ points to this court's decision in *Biomedical Patent Management Corp. v. California, Department of Health Services*, 505 F.3d 1328 (Fed. Cir. 2007) ("*BPMC*"), as holding that a state university's participation in one lawsuit does not amount to a waiver of immunity in a separate lawsuit, even one involving the same patents.

Again we agree with HQ. A123's reliance on this court's decision in *Genentech*, 143 F.3d 1446, is unavailing; the Supreme Court vacated that decision in light of its decision in *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 537 U.S. 666 (1999), making it of no precedential value. Rather, *BPMC* governs.

In *BPMC*, BPMC brought suit against the California Department of Health Services ("DHS") in the Northern District of California, alleging infringement of U.S. Patent 4,874,693. 505 F.3d. at 1331. The district court dismissed the suit based on DHS's assertion of Eleventh Amendment immunity. *Id.* DHS, however, had intervened in an earlier suit against BPMC, later dismissed for improper venue, seeking a declaration of noninfringement and invalidity of the same patent. *Id.* On appeal, BPMC argued that DHS's intervention in the earlier declaratory judgment suit had waived its immunity in the later suit. We disagreed and held that where a waiver of immunity occurs in one suit, the waiver does not extend to an entirely separate lawsuit, even one involving the same subject matter and the same parties. *Id.* at 1339; *see also Tegic*, 458 F.3d at 1342-43 (holding that submitting to an infringement suit in one forum does not waive immunity in a separate infringement suit filed in a different forum). Accordingly, UT's waiver of Eleventh Amendment immunity in a patent infringement suit in the Northern District

of Texas did not result in a waiver of immunity in this separate infringement action. Absent a waiver, UT cannot be joined.

### III. Indispensable Party

If a party is deemed necessary under Rule 19(a), but cannot be joined, then a court must consider whether that party is indispensable and dismissal appropriate under Rule 19(b). *Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1272 (Fed. Cir. 1998); *Vaupel*, 944 F.2d at 876 n.1. Rule 19(b) states that when joinder of a necessary party is not feasible:

> [T]he court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided . . . ;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). Since joinder is an issue not unique to patent law, we apply the law of the regional circuit, here the First Circuit. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1461 (Fed. Cir. 1990); *see also Dainippon*, 142 F.3d at 1269 (applying Ninth Circuit law).

A123 argues that the district court abused its discretion by not conducting an analysis under Rule 19. In addition to repeating its argument that UT is not a neces-

sary party, A123 also argues that UT is a dispensable party, citing *In re Olympic Mills Corp.*, 477 F.3d 1, 8-9 (1st Cir. 2007). Specifically, A123 contends that because HQ and UT share the common goal of defending the patents' validity and have jointly sought legal assistance in Texas to further that goal, the interest represented by Rule 19(b)'s first factor—the interest of the absent party—weighs against finding that UT is an indispensable party. A123 also contends that although the interest represented by Rule 19(b)'s second factor, the defendant's interest in avoiding multiple lawsuits and inconsistent relief, has little relevancy in the context of a declaratory judgment suit, interests represented by Rule 19(b)'s remaining factors, the interest of the courts and the public in complete and efficient settlement of controversies and the plaintiff's interest in choosing the forum, both weigh against finding that UT is an indispensable party and in favor of allowing A123's lawsuit to go forward. *See id.* at 9 (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 108-11 (1968)).

HQ responds that the district court did not rule under Rule 19, but rather it exercised its broad discretion to yield jurisdiction over A123's first-filed declaratory judgment suit to a later-filed suit in which all the necessary parties were joined. But regardless, HQ asserts, UT is an indispensable party under Rule 19(b)'s four factors because (1) HQ, as a mere field-of-use licensee, cannot adequately represent UT's rights in the patents; (2) the prejudice to UT cannot be lessened or avoided by fashioning an invalidity ruling that affects only HQ; (3) the nonjoinder may leave A123 subject to additional infringement claims by UT for fields of use not licensed by HQ; and (4) A123 has an adequate remedy by counterclaiming for noninfringement and invalidity in the Texas action, where all the necessary parties are already joined. A123

also argues that Rule 19(b)'s first factor weighs conclusively in favor of dismissal when the absent party asserts sovereign immunity, citing *Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008).

The district court did not undertake a Rule 19(b) analysis in denying A123's motion to reopen the case, basing its decision instead on its discretion to decline to exercise jurisdiction over a properly brought declaratory judgment suit in favor of a later-filed suit. *A123 Sys.*, 657 F. Supp. 2d at 279. The district court did state, however, that it chose to exercise its discretion because A123's first-filed action would be subject to imminent dismissal for failure to join a necessary party, *id.* at 280, making a Rule 19(b) analysis necessary, *Dainippon*, 142 F.3d at 1272. The parties appear to have briefed the Rule 19(b) issue below and do so again on appeal. Because the district court made sufficient factual findings for us to determine whether UT is an indispensable party, and because the First Circuit has held that, although remand is the "preferred position," it may rule on Rule 19(b) determinations on appeal *de novo, Olympic Mills*, 477 F.3d at 9, we will decide the issue in the first instance on appeal.

The district court addressed Rule 19(b)'s first factor—"the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties"—by finding that maintaining jurisdiction over the A123's declaratory judgment suit posed a significant risk of prejudicing UT's interests in the '382 and '640 patents. *A123 Sys.*, 657 F. Supp. 2d at 280. Specifically, the court concluded that were it to reinstate the action and declare the patents invalid, UT would lose all rights in its patents despite the fact that it had no opportunity to defend its interests in the litigation. *Id.* We must give sufficient weight to the prejudice to UT, which is absent from this suit based on a claim of sovereign immunity. *Pimentel*,

553 U.S. at 866-69 (holding that the lower courts erred in their analysis of Rule 19(b)'s first factor by "not accord[ing] proper weight to the compelling claim of sovereign immunity"). Although HQ and UT undoubtedly share the same overarching goal of defending the patents' validity, neither that goal nor UT's decision to file suit jointly with HQ in Texas demonstrates that UT's interests will be adequately represented by HQ in this action. HQ and UT's interests in the patents, although overlapping, are not identical. HQ is a field-of-use licensee, and a claim construction that serves its interests in obtaining an infringement judgment against A123 in this case may very well conflict with UT's interests in subject matter not licensed to HQ and in not risking the validity of its patents' claims.

*Dainippon*, upon which A123 relies, is distinguishable. In *Dainippon*, the absent party, CFMT, was incorporated by the patent owner, CFM, as a wholly owned, patent-holding company for its intellectual property, with CFM assigning its patents to CFMT and CFMT licensing them back exclusively to CFM. *Id.* at 1267-68. As such, the parties' interests in the asserted patents were not just common, but identical. Accordingly, we held that CFMT's interests in the patents were adequately represented by its exclusive licensee, finding it "highly relevant" that the absent party was just a holding company, *id.* at 1272-73, for "a patent should not be placed at risk of invalidation by the licensee without the participation of the patentee," *Schwarz Pharma, Inc. v. Paddock Labs., Inc.* 504 F.3d 1371, 1374 (Fed. Cir. 2007).

In addition to finding that UT would be prejudiced, the district court also implicitly found that a judgment rendered without UT would be inadequate, Rule 19(b)'s third factor. The court found that allowing a field-of-use licensee like HQ to sue or be sued alone "poses a substan-

tial risk of multiple suits and multiple liabilities against an alleged infringer for a single act of infringement." *A123 Sys.*, 657 F. Supp. 2d at 280; *see also Schwarz*, 504 F.3d at 1374 ("The presence of the owner of the patent as a party is indispensable . . . in most cases to enable the alleged infringer to respond in one action to all claims of infringement for his act, and thus either to defeat all claims in the one action, or by satisfying one adverse decree to bar all subsequent actions." (quoting *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468 (1926))). While A123 argues that this factor has little relevancy in a declaratory judgment action, again relying on *Dainippon*, 142 F.3d at 1272, we disagree. Because HQ is a field-of-use licensee and UT has retained non-overlapping rights in the patents in suit, UT may very well be able to assert infringement claims against A123 that HQ cannot, creating the risk of multiple lawsuits and of inconsistent relief.

Finally, the district court considered A123's interest in having a forum to litigate its defenses to claims of infringement (*i.e.*, an adequate remedy if the action is dismissed for nonjoinder), finding that because UT has waived immunity to suit in Texas, A123 may assert counterclaims for a declaration of noninfringement and invalidity in that action. *A123 Sys.*, 657 F. Supp. 2d at 281. Accordingly, three of the four Rule 19(b) factors weigh in favor of holding UT to be an indispensable party.[*] Accordingly, we hold that UT was not only a necessary party but also an indispensable party, making dismissal appropriate.

---

[*] With regard to Rule 19(b)'s second factor—"the extent to which any prejudice could be lessened or avoided"—the accused infringer here has not suggested any alternative that would reduce the prejudice to UT.

CONCLUSION

For the foregoing reasons, we affirm the district court's decision denying A123's motion to reopen and thus dismissing A123's declaratory judgment suit.

**AFFIRMED**