# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 24, 2022

Lyle W. Cayce
Clerk

No. 20-30796

Paige Lee; Business Moves Consulting, Incorporated; Brandmixer, Incorporated; Curtis Bordenave,

*Plaintiffs—Appellants*,

*versus*

Anthony Lawrence Collection, L.L.C.; Defron Fobb; Thaddeus Reed, *also known as* Reed Enterprise; Collegiate Licensing Company, L.L.C., *incorrectly sued as* Learfield Communications, L.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-839

Before Jolly, Elrod, and Oldham, *Circuit Judges*.

Jennifer Walker Elrod, *Circuit Judge*:

Curtis Bordenave and Paige Lee are in the business of owning trademarks. They petitioned the United States Patent and Trademark Office for federal registration of the mark "THEEILOVE" (and other similar marks). That phrase, "Thee I Love," comes from the alma mater of Jackson State University. They then sued the University's licensing agent (Collegiate Licensing Company) and a few of the licensees in charge of

No. 20-30796

producing and selling the University's merchandise (Anthony Lawrence Collection, Defron Fobb, and Thaddeus Reed, together "the Licensees"). But they did *not* sue the University itself. Collegiate and the Licensees moved to dismiss under Federal Rule of Civil Procedure 12(b)(7). The district court granted the motion and dismissed the suit without prejudice. We AFFIRM.

I.

Curtis Bordenave, by his telling, licenses trademarks "from time to time." He owns Business Moves Consulting, a "branding business[]" which "protect[s] the identity of the products" it sells "by consistent, deliberate federal trademark registration." In 2017, Business Moves applied for the design mark "THEEILOVE," which the USPTO granted the next year. Business Moves then licensed use of the mark to Brandmixer (also a branding business) and Paige Lee, all of which claim to sell apparel with the registered design. In 2019, Business Moves and Brandmixer together applied for another "THEE I LOVE" mark, this time for several other uses, such as on license plates. (That application is still pending with the USPTO.)

This posed a problem for Jackson State University. Founded in 1877, the University is one of the largest historically black colleges or universities in the country. Its football team, led by Head Coach Deion Sanders (also known as "Prime Time" or "Neon Deion"), runs onto the field each game to the music of the University's marching band, the Sonic Boom of the South. And when the Tigers secured the Southwestern Athletic Conference championship last season, the Sonic Boom of the South played "Thee I Love," the University's alma mater, for the team and all its loyal fans. That phrase plays a significant role in the University's lore, as it has served as the University's alma mater for roughly eighty years. Students and alumni wear shirts bearing the phrase, and the State of Mississippi even issues vanity plates with "Thee I Love" and the school's logo to the University's most

No. 20-30796

loyal fans.  The University does not handle the licensing of its trademarks or make its own merchandise.  It instead works with Collegiate Licensing Company to license out the University's "trademarks and other indicia" to manufacturers to make (and sometimes sell) its merchandise.   The University and Collegiate have since authorized several licensees, including Anthony Lawrence Collection, LLC, Defron Fobb, and Thaddeus Reed, to produce and sell the University's merchandise.

Despite this history, the University never applied to have the phrase registered as a federal mark until after Business Moves had already done so. The University *did* register a mark under Mississippi law in 2015 for use on vanity plates, and in 2019 (after Business Moves had already secured the federal mark) for use on merchandise.  It also claims to have common-law rights to the mark under the Lanham Act.  The University applied in late 2019 for the same federal marks as it secured under state law, but the USPTO preliminarily refused the applications because Business Moves and Brandmixer beat it to the punch.

Business Moves (along with Brandmixer, Bordenave, and Lee) sued Collegiate and the Licensees for various claims centered on their licensing, manufacturing, and selling of "Thee I Love" merchandise.  The primary claims were brought under the Lanham Act for trademark infringement and unfair competition.  Along with damages, plaintiffs requested the court permanently enjoin the defendants from producing or selling any more "infringing" merchandise, and that the court declare that defendants were infringing on the plaintiffs' federally registered marks.

Collegiate and the Licensees moved to dismiss under Rule 12(b)(1) and (7).  They argued that they were merely the University's agents, and that these claims are premised on a not-yet-fought battle over who "Thee I Love" rightfully (and lawfully) belongs to.  Because defendants said they could not

adequately fight that battle for the University, they contended that the University was a required party under Rule 19(a)(1)(A) and (B). But because the University enjoys sovereign immunity (and thus cannot be joined), defendants urged that the court should, "in equity and good conscience," dismiss the case. Plaintiffs responded that Collegiate and the Licensees were merely joint tortfeasors, and that plaintiffs were not required to include *every* joint tortfeasor. Plaintiffs went on to say that even if the University was a required party, the district court could proceed without it because these claims would not affect the University's claimed right to the phrase "Thee I Love" and would not preclude it from claiming that interest.

The district court granted the motions to dismiss under Rule 12(b)(7). The court first held that, under Rule 19(a)(1)(B)(i), the University claimed an interest in the "Thee I Love" phrase, and without the University present, its interests could be practically impaired—especially because of "the ongoing petition process between [the University] and plaintiffs over the trademark." Because the court could not join the University, the court then considered under Rule 19(b) whether "'equity and good conscience' mandate dismissal." It ultimately concluded that each of Rule 19(b)'s four factors counseled in favor of dismissal and dismissed the case without reaching the Rule 12(b)(1) issue.[1]

---

[1] Dismissing under Rule 12(b)(7) without resolving the Rule 12(b)(1) issue is appropriate. That is because the dismissal was without prejudice. *See* Fed. R. Civ. P. 19(b); *id.* R. 41(b). And "in an ordinary civil case, all dismissals [without prejudice] are created equal—they all equally prevent the exercise of jurisdiction where there is none." *Davis v. Sumlin*, 999 F.3d 278, 280 (5th Cir. 2021); *see Mowrer v. DOT*, 14 F.4th 723, 733–43 (D.C. Cir. 2021) (Katsas, J., concurring) (detailing principles of judicial sequencing).

No. 20-30796

## II.

We review a district court's assessment of whether a party is "required" under Rule 19 for abuse of discretion. *Moss v. Princip*, 913 F.3d 508, 514–15 (5th Cir. 2019). Rule 12(b)(7) allows for dismissal of a suit when the plaintiff fails to join a required party under Rule 19. Fed. R. Civ. P. 12(b)(7). There are three types of "required" parties: (1) parties needed to give complete relief to the existing parties, *id.* R. 19(a)(1)(A); (2) parties who claim interests which could be practically impaired or impeded if not joined, *id.* R. 19(a)(1)(B)(i); and (3) parties necessary to ensure that existing parties are not exposed to multiple or inconsistent obligations, *id.* R. 19(a)(1)(B)(ii). The burden of proof starts with the movants, but if at first glance it appears a "possibly necessary party is absent," the burden shifts to the nonmovant to dispute that "initial appraisal" of the facts. *Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009).

If an absent party is "required" under Rule 19(a), but joinder would destroy the court's jurisdiction (as is the case here), the court has two options: continue without the absent party or dismiss the litigation. *HS Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003). Rule 19(b) tells courts to make this decision "in equity and good conscience," weighing these factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>> (A) protective provisions in the judgment;
>> (B) shaping the relief; or
>> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and

No. 20-30796

>   (4) whether the plaintiff would have an adequate
>   remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b)(1)–(4). With no prescribed formula for balancing these factors, the inquiry is "[g]uided by common sense" and is highly case-specific, requiring a "flexible and pragmatic" evaluation of the facts. *Moss*, 913 F.3d at 515, 517.

## A.

The first question is whether the University was a required party under Rule 19(a). The district court held that the University has "an interest relating to the subject of the action" which, if the University is not joined, the suit "may as a practical matter impair or impede [its] ability to protect the interest." We agree.

First, the inquiry at this stage is more about whether the absent party claims a non-frivolous interest, not the ultimate merit of the claim. *See, e.g.*, *Republic of Philippines v. Pimentel*, 553 U.S. 851, 868–69 (2008); *White v. Univ. of Cal.*, 765 F.3d 1010, 1026–27 (9th Cir. 2014). The University here claims an interest in the mark that is the basis of each of appellants' claims. Appellants spend much of their briefing arguing that because the University has no interest in the mark, it cannot be a required party. But that begs the question: the very basis of appellants' claims require that they prove their ownership of the mark, and the University's consistent usage (and purported state- and common-law rights) reveal the ownership dispute lurking beneath the surface. The ongoing dispute over the federal mark is already underway. Rule 19 allows courts to consider these facts, and the district court was not required to blind itself to the realities of that litigation in reaching its result.

Second, appellants argue that even if the University has an interest in this suit, the University's absence would not keep it from protecting that interest later on. They make two points along these lines: (1) the University

6

No. 20-30796

can sue to challenge appellants' mark in federal court apart from this litigation; and (2) the University would not be precluded from challenging the federal mark if it is not joined here. But Rule 19 is not concerned with preclusive effect as much as it is "practical[]" impairment.[2] Fed. R. Civ. P. 19(a)(1)(B)(i). Even if the University remains free to challenge Business Moves's ownership of "Thee I Love" elsewhere, it could still face challenges protecting its interest if it is not joined here. For instance, if the University was part of the lawsuit, there would be no need to challenge Business Moves's trademark in other fora. A loss here, in its absence, could put pressure on the University in the short term to abandon or capitulate to appellants, as it could all but halt their use of the mark in commerce. Because ownership of the mark is what this case is ultimately about, Rule 19's interest in "protect[ing] interested parties and avoid[ing] waste of judicial resources" would counsel in favor of the University's inclusion. *Askew v. Sheriff of Cook Cnty., Ill.*, 568 F.3d 632, 634 (7th Cir. 2009) (quotation omitted).

Thus, the district court did not abuse its discretion in concluding that the University was a required party under Rule 19(a)(1)(B)(i). And because everyone agrees that the University enjoys sovereign immunity, the question becomes whether the district court abused its discretion in dismissing the case rather than proceeding without the University.

B.

When a required party cannot be feasibly joined, the district court "must determine whether, in equity and good conscience, the action should

---

[2] Even short of preclusive effect, we have previously explored the circumstances under which the *stare decisis* effect of a decision could justify joinder, highlighting the "practical disadvantage" that a previous non-preclusive decision could pose. *See Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 829 (5th Cir. 1967).

proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). We again agree with the district court's conclusion.

1.

Predominating our analysis is the fact that the University is an arm of the State of Mississippi. *See Whiting v. Jackson State Univ.*, 616 F.2d 116, 127 n.8 (5th Cir. 1980). It thus enjoys sovereign immunity. *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 257 (5th Cir. 2020). That sovereign immunity "does not exist solely in order to 'preven[t] federal-court judgments that must be paid out of a State's treasury'; it also serves to avoid the 'indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996) (first quoting *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994), then quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)). Because the University cannot enter the scrum without waiving its immunity, its sovereign interest is necessarily impaired when plaintiffs try to use the state's sovereign immunity to lure it into a lawsuit against its will. *Cf. Gensetix, Inc. v. Bd. of Regents of Univ. of Tex. Sys.*, 966 F.3d 1316, 1322–23 (Fed. Cir. 2020) (a university cannot be made an involuntary plaintiff under Rule 19(a)(2) because of its sovereign immunity).

The Supreme Court in *Republic of Philippines v. Pimentel* said that "where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action *must be ordered* where there is a potential for injury to the interests of the absent sovereign." 553 U.S. at 867 (emphasis added). Even before *Pimentel*, other courts of appeals left "very little room for balancing of other factors set out in Rule 19(b) where a necessary party under Rule 19(a) is immune from suit because immunity may be viewed as one of those interests compelling by themselves." *Kickapoo Tribe of Indians*

No. 20-30796

*v. Babbitt*, 43 F.3d 1491, 1496 (D.C. Cir. 1995) (quotation omitted).  And more recently, in an adjacent context, another court recognized the "wall of circuit authority" favoring dismissal of actions "in which a necessary party cannot be joined due to tribal sovereign immunity."  *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 857 (9th Cir. 2019) (citing *White*, 765 F.3d at 1028).

The same can be said for state sovereign immunity.  As compelled by *Pimentel*, as discussed above, the University has a non-frivolous claim here.  As a practical matter, this suit would impair or impede its ability to protect its interest in the "Thee I Love" mark.  That is enough to require dismissal of the action because "there is a potential for injury to" the University's "interests [as] the absent sovereign."  *See Pimentel*, 553 U.S. at 867; *see also Gensetix*, 966 F.3d at 1331–34 (Taranto, J., dissenting in part).[3]  Under Rule

---

[3] In a thorough dissenting opinion, Judge Taranto explains how *Pimentel* commands that where, as here, a state "sovereign entity is a required party under Rule 19(a), is protected against joinder by sovereign immunity, and makes a non-frivolous assertion that it will be prejudiced by a suit proceeding in its absence, a district court" must dismiss the suit under Rule 19(b). *Gensetix*, 966 F.3d at 1331–34 (Taranto, J., dissenting in part). The majority opinion, by contrast, concluded that the sovereign's interests in that case were not substantial enough to justify dismissal "in equity and good conscience." *Id.* at 1324–27. Specifically, the majority determined that the prejudice to the absent state sovereign was "greatly reduced" because the party had an "identical" (rather than "overlapping") interest in the property at issue. *Id.* at 1325–27.

We disagree with the *Gensetix* majority opinion's treatment of the state's sovereign status as insufficient to justify dismissal for several reasons. First, it differs from several of our sister circuits' cases pre- and post-*Pimentel*. *See, e.g.*, *Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1317–20 (11th Cir. 2017); *Two Shields v. Wilkinson*, 790 F.3d 791, 798 (8th Cir. 2015); *Gensetix*, 966 F.3d at 1331–34 (Taranto, J., dissenting in part) (collecting cases). Second, *Pimentel* involved *foreign* sovereign immunity while this case and *Gensetix* involved *state* sovereign immunity. This matters because "the States' sovereign immunity is a historically rooted principle embedded in the text and structure of the Constitution," while a foreign nation's sovereign immunity is by "consent or compact" (*i.e.*, not grounded in the Constitution). *Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485, 1497, 1499 (2019). Third, the *Gensetix* majority opinion's contention that a

No. 20-30796

19(b), in the interest of "equity and good conscience," the suit should be dismissed.

2.

The outcome is the same when considering the Rule 19(b) factors. The aim is to weigh those factors "seeking to avoid manifest injustice while taking full cognizance of the practicalities involved." *Pulitzer–Polster v. Pulitzer*, 784 F.2d 1305, 1312 (5th Cir. 1986). The district court concluded that all four of Rule 19(b)'s factors favored dismissal, and we again agree.

Under the first factor, the district court considered "the extent to which a judgment rendered in [the University's] absence might prejudice [the University] or the existing parties." Fed. R. Civ. P. 19(b)(1). On this point, the district court said that both the University and Collegiate would be prejudiced without the University's involvement. The court pointed to appellants' own complaint to cast doubt on their contention that this case is only about their federal trademark rights; appellants, for instance, complain about "Thee I Love" vanity plates, even though appellants conceded the University has a trademark on those plates under Mississippi law.

Appellants do not highlight that concession, but instead focus on the fact that Collegiate is well-equipped to defend the University's interest on its

---

state interest is "identical" to a non-governmental party is unpersuasive. For one thing, whether there is identity or not, a court's "consideration of the merits was itself an infringement on [state] sovereign immunity." *Pimentel*, 553 U.S. at 864. And if anything, for state sovereign immunity, identity is *worse* because we would *allow indirect* adjudication of the state's interest, even though state sovereign immunity would *forbid direct* adjudication of that interest. For another, the notion that a state entity's interest in property is "identical" to a non-government party's is perplexing, to put it mildly. In any event, as discussed in the next section, we conclude that the University's interests *here* are substantial enough even under each of the Rule 19(b) factors. *See Gensetix*, 966 F.3d at 1324–27 (evaluating factors).

own.  Collegiate responds that it is "merely a licensing agent with limited rights" which would struggle to establish the University's "use [of 'Thee I Love'] in commerce over some eight decades."  *Cf. Two Shields*, 790 F.3d at 799; *Tell v. Trs. of Dartmouth Coll.*, 145 F.3d 417, 419 (1st Cir. 1998) ("[W]ithout a perfect identity of interests, a court must be very cautious in concluding that a litigant will serve as a proxy for an absent party.").

This point, on balance, favors the University.  To appellants' credit, there does not seem to be a risk that appellees would take a position *inconsistent* with the University.  *See Tell*, 145 F.3d at 419.  Foundational to appellants' claims is their ownership of the mark, and appellees and the University both want to disprove that ownership.  So if the University was joined, it is unlikely that Collegiate or the Licensees would take a different position on who owns the mark.  On the other hand, the battle over ownership of the mark is the University's, and as the commercial agents for the University's use of that mark, neither Collegiate nor the Licensees have the same personal stake in that battle as the University.

Many of the arguments center on whether the University and appellees have nonidentical interests.  Two Federal Circuit cases are instructive. *Gensetix*, 966 F.3d 1316; *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213 (Fed. Cir. 2010).  The court in *Gensetix* held that a patent licensee could proceed without the patent owner (the University of Texas) because the owner had given the licensee a license "in every field," and thus the interests of the owner and licensee were "identical."  966 F.3d at 1326.  The court in *A123*, by contrast, held that a patent owner was a required party when the owner gave only a "field-of-use license" to the licensee, so their interests were "overlapping" but not "identical."  626 F.3d at 1221.  Here, the University has an agreement with Collegiate to be its exclusive agent for licensing out the University's "indicia" "in connection with the marketing of various articles of merchandise and to conduct certain [p]romotions."

Collegiate has no interest in the ownership of the mark, and the University maintains sole discretion to grant licensees access to the mark. It is unclear at this stage whether the University could use this mark for any reason other than merchandise, but it at least maintains sole rights to use of the mark itself. Like the owner/licensee relationship in *A123*, the University and Collegiate have "overlapping" but not "identical" interests in ownership of the mark, which counsels in favor of dismissal. *See id.*

The district court next considered the second factor: "the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures." Fed. R. Civ. P. 19(b)(2). The district court noted that the University's interest in this suit was "implicated not only by potential judgment or the form of relief, but by the necessary inquiry into ownership of the trademark itself." Appellants provide only a brief retort, that this factor "isn't useful with a sovereign nonparty" and that the University is "protected from liability" by their agency agreement with Collegiate. The indemnity provision, however, does not have much to do with the University's continued interest in owning the rights to "Thee I Love," so this factor also weighs in the University's favor.

The third factor concerns "whether a judgment rendered in the [University's] absence would be adequate." Fed. R. Civ. P. 19(b)(3). Appellants again urge that a judgment would be adequate because appellees are mere joint tortfeasors with the University, and appellees again respond that it does not fully share the University's interests. As with the other discussions of the differing interests, the district court concluded that the University and appellees did not have the same interests in the phrase "Thee I Love." The defendant in *Gensetix* had a patent "in every field," and thus its interests were "identical" to the absent party. 966 F.3d at 1326. The defendant in *A123*, on the other hand, had only a "field-of-use license," so

12

its interests were "overlapping" but not "identical" to those of the absent party. 626 F.3d at 1221. The district court likened this case to *A123* and distinguished it from *Gensetix*, concluding it could not "presume the licensees fully stand in [the University's] shoes." That comparison is sound: The University still retains interests in "Thee I Love" and retains control over which companies receive its licenses. With that said, appellants' joint-tortfeasor point has purchase here: there is not any evidence that appellees cannot carry out the specific relief requested, or that the University's joinder would somehow enhance their ability to do so. On balance, it was not an abuse of discretion to disregard that fact, but this factor is at least more neutral than the others.

The final factor is about "whether the plaintiff[s] would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(4). Appellants on this point focus on the futility of requiring it to take this dispute elsewhere. As the district court noted, the basis of this dispute is which party "Thee I Love" belongs to. Though the parties dispute whether appellants could bring these claims in state court, the proper forum for determining the proper owner of these trademark rights is the USPTO. Because appellants can presumably bring these claims against Collegiate and the Licensees *after* they have established their superior rights to the mark, this factor too weighs in favor of dismissal.

Thus, even setting aside the University's sovereign status, the balance of the Rule 19(b) factors weigh in favor of dismissal. As a result, the district court did not abuse its discretion in dismissing the case.

\*      \*      \*

Because the University is a required party under Rule 19(a) and the suit was properly dismissed under Rule 19(b), we AFFIRM.