# United States Court of Appeals for the Federal Circuit

---

**GENSETIX, INC.,**
*Plaintiff-Appellant*

**v.**

**THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM,**
*Plaintiff-Appellee*

**v.**

**BAYLOR COLLEGE OF MEDICINE, DIAKONOS RESEARCH LTD, WILLIAM K. DECKER,**
*Defendants-Appellees*

---

2019-1424

---

Appeal from the United States District Court for the Southern District of Texas in No. 4:17-cv-01025, Judge Andrew S. Hanen.

---

Decided: July 24, 2020

---

PAUL SKIERMONT, Skiermont Derby LLP, Dallas, TX, argued for plaintiff-appellant. Also represented by SARAH ELIZABETH SPIRES; MIEKE K. MALMBERG, Los Angeles, CA; CHRISTOPHER MICHAEL HODGE, Oracle Corp., Irving, TX; IMRON T. ALY, Schiff Hardin, Chicago, IL.

PETER E. MIMS, Vinson & Elkins LLP, Houston, TX, argued for plaintiff-appellee. Also represented by OLIN RAY HEBERT, III, Austin, TX.

MICHAEL HAWES, Baker Botts, LLP, Houston, TX, argued for defendants-appellees Baylor College of Medicine, Diakonos Research Ltd. Defendant-appellee Baylor College of Medicine also represented by PAUL R. MORICO.

GORDON ARNOLD, Arnold, Knobloch & Saunders, L.L.P., Houston, TX, for defendant-appellee Diakonos Research Ltd.

MURRAY JULES FOGLER, Fogler Brar O'Neil and Gray LLP, Houston, TX, for defendant-appellee William K. Decker.

_____

Before NEWMAN, O'MALLEY, and TARANTO, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* O'MALLEY.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* NEWMAN.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* TARANTO.

O'MALLEY, *Circuit Judge.*

This case involves the interplay of state sovereign immunity under the Eleventh Amendment and required joinder of parties under Rule 19 of the Federal Rules of Civil Procedure. Gensetix, Inc. ("Gensetix") exclusively licensed U.S. Patent Nos. 8,728,806 and 9,333,248 from the University of Texas ("UT"), an arm of the state of Texas. Gensetix then sued Baylor College of Medicine, Diakonos Research Ltd., and William K. Decker (collectively, "Baylor") for infringement of the patents-in-suit, naming UT as an

involuntary plaintiff pursuant to Rule 19(a).  The District Court for the Southern District of Texas determined that the Eleventh Amendment barred joinder of UT as an involuntary plaintiff.  *Gensetix, Inc. v. Baylor Coll. of Med.*, 354 F. Supp. 3d 759, 766 (S.D. Tex. 2018).  The court also concluded that, under Rule 19(b), the suit could not proceed in UT's absence.  *Id.* at 773–74.  Accordingly, the court dismissed the suit.  This appeal followed.  For the reasons stated below, we affirm-in-part, reverse-in-part, and remand.

## I. BACKGROUND

The patents-in-suit are directed to methods of modifying a patient's immune system to kill cancer cells.  Decker, the named inventor of the patents-in-suit, developed his invention during his employment at the University of Texas MD Anderson Cancer Center.  Pursuant to the terms of Decker's employment agreement, the patents-in-suit were assigned to UT.[1]  In September 2008, UT granted an exclusive license in the patents-in-suit to Alex Mirrow, a third party not relevant to this suit.  In January 2014, Mirrow assigned his rights in the exclusive license to Gensetix.  UT confirmed Mirrow's assignment of the exclusive license to Gensetix in a June 2014 amendment.

The license agreement provides that, Gensetix, at its own expense, *must* enforce any patent "covered by the license and is entitled to retain recovery from such enforcement."  *Gensetix*, 354 F. Supp. 3d at 769.  UT retained a secondary right to sue if Gensetix fails to file suit against a substantial infringer within six months of knowledge of

---

[1]    According to the complaint, Decker left the University of Texas MD Anderson Cancer Center around 2011 and joined the faculty at Baylor College of Medicine.  J.A. 119.  Neither Decker nor Baylor College of Medicine have licensed the patents-in-suit from UT or Gensetix.

infringement. *Id.* The parties agreed to fully cooperate with each other in any infringement suit. And, the parties agreed that nothing in the agreement shall be deemed a waiver by UT of its sovereign immunity. *Id.* at 772.

In April 2017, Gensetix filed this suit against Baylor, alleging infringement of the patents-in-suit. Gensetix noted that, before filing its complaint, it requested that UT join as a co-plaintiff, but UT declined. Gensetix therefore named UT as an involuntary plaintiff pursuant to Rule 19(a). J.A. 115–16. In its complaint, Gensetix alleged that Decker "continued and continues to use technology that infringes one or more claims of the [p]atents-in-[s]uit . . . as part of his work at" Baylor. J.A. 119. Gensetix also alleged that in 2013 and 2014, Decker published content while at Baylor that "gives Gensetix reason to believe" that Decker has practiced methods infringing at least claim 1 of each of the patents-in-suit. *Id.* According to the complaint, in May 2016, Baylor filed two patent applications, naming Decker as an inventor, which rely on the methods claimed in the patents-in-suit. J.A. 127.

UT filed a motion to dismiss pursuant to Rule 12(b)(1), seeking to dismiss itself from the lawsuit. UT argued that it is a sovereign state entity under Texas law and that, under the Eleventh Amendment, the district court had no subject matter jurisdiction over UT.[2] It argued that,

---

[2] As the district court noted, the Eleventh Amendment "confers waivable immunity upon sovereign entities 'rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction.'" *Gensetix*, 354 F. Supp. 3d at 764 (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997). The court correctly concluded that the Eleventh Amendment does not necessarily deprive federal courts of subject matter jurisdiction, rather, the "issue in this case is whether the Eleventh Amendment prevents

pursuant to the license agreement, it had not waived its sovereign immunity, nor did it have the authority to do so because such authority lies only with the Texas Legislature.

Baylor argued that: (1) UT is a necessary party because it owns the patents-in-suit and transferred less than all substantial patent rights to Gensetix; (2) UT cannot be joined as an involuntary plaintiff because, as an entity of the State of Texas, it is entitled to Eleventh Amendment sovereign immunity; and (3) the Rule 19(b) factors weigh in favor of dismissing the suit, rather than proceeding in UT's absence.

The district court granted UT's motion to dismiss. It held that "[t]he purpose of the Eleventh Amendment is to prevent states from being compelled to litigate." *Gensetix*, 354 F. Supp. 3d at 766 (internal quotation marks omitted). It found that, while "there [were] currently no claims against UT, requiring joinder would, in effect, force UT to pursue claims against its will." *Id.* Accordingly, the court held that, because "UT did not waive its immunity, initiate [the] suit, or agree to participate in [the] litigation," the Eleventh Amendment prohibited involuntary joinder. *Id.*

As to whether the infringement suit could proceed in UT's absence, the court held that UT was a "necessary" party under Rule 19(a) because it retained substantial rights in the patents-in-suit.[3] Analyzing the applicable

---

UT from being joined as an involuntary plaintiff in a patent suit." *Id.*

[3] Rule 19 no longer uses the term "necessary party;" the more modern term is "required party." *See Republic of the Phil. v. Pimentel*, 553 U.S. 851, 855–56 (2008). The Rule also no longer uses the term "indispensable." *Id.* These changes were intended to be stylistic only. *See* Fed.

Rule 19(b) factors, the district court concluded that UT was an "indispensable" party, and that the suit could not proceed in its absence. *Id.* at 773–74. Accordingly, the court dismissed the case. Gensetix timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

On appeal, Gensetix argues that the district court (1) erred in holding that sovereign immunity bars coercive joinder of UT pursuant to Rule 19(a); and (2) abused its discretion in determining that, under Rule 19(b), the infringement suit should be dismissed rather than proceed in UT's absence.[4] We address each argument in turn.

### A. Sovereign Immunity Bars Rule 19(a)(2) Joinder

Rule 19(a)(2) requires a court to order a required plaintiff "who refuses to join as a plaintiff" to "be made either a defendant or, in a proper case, an involuntary plaintiff." Fed. R. Civ. P. 19(a)(2). The Eleventh Amendment provides, however, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the procedural issue of joinder under Rule 19 is not unique to patent law, and we thus review its application under the law of the regional circuit, to the extent the district court assessed the interplay between Rule 19 and the Eleventh Amendment, we review that question using the law of our circuit. *Regents of Univ. of N.M. v. Knight*, 321 F.3d 1111, 1124 (Fed. Cir. 2003). We therefore apply

---

R. Civ. P. 19 advisory committee's note to 2007 amendment.

[4] Gensetix does not challenge the district court's conclusion that, pursuant to the license agreement, UT did not transfer all substantial rights in the patents to Gensetix.

our law and review the district court's decision on Eleventh Amendment immunity de novo. *Id.*

On appeal, Gensetix argues that sovereign immunity does not preclude coercive joinder of a sovereign under Rule 19(a)(2). In Gensetix's view, the Eleventh Amendment bars suits brought by private citizens *against* the state, which is not the case here. Appellant's Br. 41–42 (citing *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1564 (Fed. Cir. 1997) ("*Regents of UC*")). Gensetix argues that, like *Regents of UC*, here, there are no claims or counterclaims *against* UT, thereby making sovereign immunity inapplicable. *Id.* at 43. Gensetix also contends that both the Supreme Court and our court have consistently held that a patentee who refuses to voluntarily join an infringement action initiated by its exclusive licensee can nonetheless be joined as an involuntary plaintiff. *Id.* at 39–41 (citing, e.g., *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 473 (1926), and *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1133 (Fed. Cir. 1995)).

UT responds that sovereign immunity protects it from private party litigation and this protection extends to joinder under Rule 19(a). According to UT, sovereign immunity "controls over the joinder process of Rule 19." UT Br. 14. And, relying on the Supreme Court's decision in *Pimentel*, 553 U.S. at 869, UT argues that, where there is a "potential for injury to the interests" of the absent sovereign, the suit must be dismissed. *Id.* at 15.

Like UT, Baylor argues that the Eleventh Amendment forbids the court from ordering UT to subject its property to federal court adjudication. Baylor Br. 16–17. According to Baylor, a state's property rights cannot be limited or defeated where the state neither brought a claim nor agreed to join the suit. And, like UT, Baylor points to the express language of Section 15.4 of the license agreement as indicative of UT's refusal to waive sovereign immunity. *Id.* at

18–19. We agree that sovereign immunity is to be applied more broadly than the face of its text.

Gensetix's attempt to limit the Eleventh Amendment to its text—*i.e.*, to cases "against" a state—is contrary to Supreme Court guidance. "[T]he sovereign immunity reflected in (rather than created by) the Eleventh Amendment transcends the narrow text of the Amendment itself." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.,* 527 U.S. 666, 687 n.5 (1999). The Supreme Court has "understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition . . . which it confirms." *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996) (quoting *Blatchford v. Native Vill. of Noatak,* 501 U.S. 775, 779 (1991)). Importantly, the Court has made clear that "[t]he Eleventh Amendment does not exist solely in order to prevent federal-court judgments that must be paid out of a State's treasury; it also serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Seminole Tribe*, 517 U.S. at 58 (citations and internal quotation marks omitted).

Gensetix provides no basis for suggesting that these principles are inapplicable in cases where the state is joined as an involuntary plaintiff. Indeed, Gensetix's reliance on our decision in *Regents of UC* is misplaced. *Regents of UC* involved a suit initiated by the University of California in the Northern District of California. 119 F.3d at 1559. In opposing transfer to the Southern District of Indiana, the university asserted that it only waived sovereign immunity with respect to California federal courts and that the Eleventh Amendment barred transfer to a different district court. *Id.* at 1564. The defendant, Eli Lilly, argued that the Eleventh Amendment is inapplicable where a state asserts a claim and the suit involves no counterclaims against the state. *Id.* We agreed with Eli Lilly, explaining that the Supreme Court has "not construe[d] the Eleventh Amendment to apply to suits in which a state

is solely a plaintiff, as UC is here." *Id.* We further explained that:

> [T]he Eleventh Amendment applies to suits "against" a state, not suits by a state. Thus, we need not determine whether UC waived its immunity only in California, because this case does not create an Eleventh Amendment jurisdictional issue concerning which the question of waiver even arises. This case only involves UC's patent infringement claims and Lilly's defenses; it does not involve any claim or counterclaim *against* UC that places UC in the position of a defendant. Accordingly, we conclude that the Eleventh Amendment does not deprive the Indiana district court of jurisdiction in this case.

*Id.* at 1564–65.

Gensetix erroneously reads *Regents of UC* to broadly hold that Eleventh Amendment immunity is inapplicable in all cases where the state is a plaintiff (even if involuntarily) and there are no counterclaims against the state. But *Regents of UC* did not create a rule whereby parties may drag a sovereign into the federal court system against its will simply because there is no claim "against" the sovereign. Instead, our holding in that case was predicated on the state *voluntarily* submitting itself to federal court jurisdiction. Indeed, we recently explained that our interpretation of the Eleventh Amendment in *Regents of UC* was "guided by" the Supreme Court's reasoning that:

> "[W]here a state voluntarily become[s] a party to a cause, and submits its rights for judicial determination, it will be bound thereby, and cannot escape the result of its own voluntary act by invoking the prohibitions of the 11th Amendment." *Gunter v. Atl. Coast Line R.R. Co.*, 200 U.S. 273, 284 (1906). Moreover, [i]t would seem anomalous or inconsistent for a State both (1) to invoke federal

> jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002).

*Regents of the Univ. of Tex. Sys. v. Bos. Sci. Corp.*, 936 F.3d 1365, 1376–77 (Fed. Cir. 2019) (alterations in original).

We conclude that the key distinction between *Regents of UC* and the present case—that UT did not voluntarily invoke federal court jurisdiction—is dispositive. Unlike the sovereign in *Regents of UC*, UT did not attempt to avail itself of federal court jurisdiction, and, in fact, has repeatedly made clear that it does not want to participate in this litigation.[5] It is immaterial that there are no claims against UT, or that UT is named an involuntary plaintiff rather than an involuntary defendant. The Eleventh Amendment serves to prevent "the indignity of subjecting a State to the coercive process of judicial tribunals" against its will. *Seminole Tribe*, 517 U.S. at 58. Accordingly, Rule 19(a)(2) cannot be used to drag an unwilling UT into federal court.

---

[5] Gensetix argues that "numerous appellate courts have confirmed" its reading of *Regents of UC*. Appellant's Br. 43–44 (citing, e.g., *California v. Atl. Richfield Co.*, 488 F.3d 112 (2d Cir. 2007); *Oklahoma ex rel. Edmondson v. Magnolia Marine Transp. Co.*, 359 F.3d 1237 (10th Cir. 2004)). But, as UT correctly points out, every case Gensetix relies on in support of this argument involves litigation *initiated by* a state as plaintiff, and a subsequent assertion of sovereign immunity to prevent removal. UT Br. 23–24.

Gensetix fares no better in its attempt to distinguish the other cases relied upon by the district court in reaching the same conclusion. For example, in *Thomas v. Bearings Corp.*, 50 F.3d 502 (8th Cir. 1995), the Eighth Circuit forbade involuntary joinder of a state agency in a lawsuit by city residents against a company that had allegedly contaminated their drinking water. The court held that the "Eleventh Amendment provides immunity from suit, not merely immunity from liability . . . . It may be circumvented by waiver, abrogation, or a suit against state officials, but federal courts cannot simply deem a state's Eleventh Amendment defense inapplicable." *Id.* at 506. The Eighth Circuit specifically noted that the Eleventh Amendment precludes involuntary joinder *even if* it involves later realignment of the state agency as a plaintiff. *Id.* at 502, 504 n.5. Gensetix argues that, in *Thomas*, the Eighth Circuit was concerned with subjecting the state agency to premature litigation, "strik[ing] at the very heart of the Eleventh Amendment by undermining the state's asserted autonomy in decision-making." Appellant's Br. 44–45 (citations omitted). In Gensetix's view, here, joining UT as an involuntary plaintiff does not undermine the state's autonomy. But forcing UT to litigate against its will does exactly that.

Gensetix also relies on *Independent Wireless*, 269 U.S. 459 (1926), and *Abbott Laboratories*, 47 F.3d 1128 (Fed. Cir. 1995), to argue that "equity and justice" require joinder of UT. *See* Appellant's Br. 39–40. In Gensetix's view, UT voluntarily granted an exclusive license to Gensetix and this license includes "an implied obligation" to the use of UT's name. Appellant's Br. 40 (citing *Indep. Wireless*, 269 U.S. at 469). Although Gensetix acknowledges that UT did not waive sovereign immunity, it nonetheless argues that UT willingly entered into the license agreement and must now abide by its terms. We disagree.

When it comes to suits between private parties, Gensetix is correct that a patentee who refuses to voluntarily

join an infringement action initiated by its exclusive licensee can ordinarily be joined as an involuntary plaintiff under Rule 19(a). *See, e.g.*, *Indep. Wireless*, 269 U.S. 459 (1926); *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1237 (Fed. Cir. 2019) (collecting cases). But we refuse to extend that principle to this case, which involves coercive joinder of a state sovereign. Indeed, none of the cases identified by Gensetix examined the interplay between Rule 19(a) and state sovereign immunity. Accordingly, it is of no moment that the license agreement requires initiation of an infringement suit by Gensetix or cooperation by UT in any infringement suit. Although UT willingly entered into the license agreement, so too, did Gensetix. It agreed to terms expressly stating that UT was not waiving its sovereign immunity, and terms that allow UT to initiate a suit on behalf of Gensetix, but not the other way around. As we explain above, in the absence of a state voluntarily availing itself of federal court jurisdiction, or an express waiver of sovereign immunity, Rule 19(a) must yield to the state's assertion of sovereign immunity.

In sum, neither Supreme Court case law, nor the decisions of this circuit or our sister circuits, support Gensetix's arguments that, absent waiver, a sovereign may be joined as an involuntary plaintiff under Rule 19(a). Accordingly, we affirm the district court's conclusion that UT may not be joined as an involuntary plaintiff.[6]

---

[6] While I may not speak for our splintered majority on this point, I have some sympathy for Judge Newman's views. Unfortunately, absent abrogation of *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, 527 U.S. 627 (1999), which I suspect would be welcome by many, I remain of the view that involuntary joinder of UT as a plaintiff to this action is impermissible.

### B.  The District Court Abused Its Discretion
### In Concluding That This Case Must Be
### Dismissed In UT's Absence

We next consider whether the district court properly concluded that this case cannot proceed in UT's absence.  A district court's analysis under Rule 19(b) is a matter of regional circuit law.  *Univ. of Utah v. Max-Planck-Gesellschaft zur Forderung der Wissenschaften E.V.*, 734 F.3d 1315, 1320 (Fed. Cir. 2013).  The Fifth Circuit reviews a district court's decision to dismiss a suit pursuant to the Rule 19(b) inquiry for abuse of discretion.  *Hood v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009).  "Determining whether [a suit should be dismissed in the absence of a required party] is a highly-practical, fact-based endeavor, and . . . a district court will ordinarily be in a better position to make a Rule 19 decision than a circuit court would be." *Id.* (internal citations omitted).[7]  "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc)).  And, "[a] district court would necessarily abuse its discretion if

---

[7]    Gensetix submits that we should review this issue de novo and argues that the district court committed legal error by (1) assuming that UT was indispensable even before it conducted its factor-by-factor analysis, and (2) failing to consider the equities.  Appellant's Br. 16–24.  We reject this attempt to manufacture legal error based on out-of-context statements from the district court's opinion.  Gensetix cannot deny that the district court did, in fact, conduct a factor-by-factor Rule 19(b) analysis.  Contrary to Gensetix's arguments, moreover, the district court did not fail to consider the equities in its Rule 19(b) analysis.  This analysis is properly reviewed under an abuse of discretion standard.

it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 n.2 (2014).

Rule 19(b) provides that, where joinder of a required party is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). This inquiry involves consideration of four factors: (1) the extent to which a judgment rendered might prejudice the missing required party or the existing parties; (2) the extent to which any prejudice could be lessened or avoided (3) whether a judgment rendered in the required party's absence would be adequate; and (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." *Id.* On appeal, Gensetix argues that the district court abused its discretion by failing to meaningfully analyze each of the Rule 19(b) factors.[8] As explained below, we agree.

---

[8] UT and Baylor argue that Gensetix waived many of its arguments regarding the court's Rule 19(b) analysis. Under Fifth Circuit case law, "an argument is not waived on appeal if the argument on the issue before the district court was sufficient to permit the district court to rule on it." *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 427 n.29 (5th Cir. 2002). Gensetix's arguments to the district court were sufficient. It is true, moreover, that a party cannot waive objection to a court's failure to apply the correct legal standard to the question presented. *Myco Indus., Inc. v. BlephEx, LLC*, 955 F.3d 1, 11 (Fed. Cir. 2020) (citing *United States v. Ali*, 508 F.3d 136, 144 n.9 (3d Cir. 2007), and *Brown v. Smith*, 551 F.3d 424, 428 n.2 (6th Cir. 2008)). Accordingly, we conclude that Gensetix did not waive any arguments regarding the Rule 19(b) inquiry.

The district court found that three out of the four Rule 19(b) factors weighed in favor of dismissing the case. As to the first factor—the extent to which a judgment rendered in UT's absence might prejudice UT or the parties to the litigation—relying on our decision in *A123 Systems, Inc. v. Hydro-Quebec*, 626 F.3d 1213 (Fed. Cir. 2010), the court found that "UT risks an invalidation of its patent without the opportunity to litigate." *Gensetix*, 354 F. Supp. 3d at 764. It concluded that it "must give sufficient weight to the prejudice to UT, which is absent from this suit based on a claim of sovereign immunity." *Id.* (quoting *A123,* 626 F.3d at 1221). Without any analysis of the second factor, the court also found that it would not be able to lessen or avoid prejudice to UT. *Id.* (citing *A123,* 626 F.3d at 1222 n.1). As to the third factor, the court found that a judgment rendered without UT would be inadequate. *Id.* It noted Baylor's argument that there is a risk of multiple suits against Baylor on the same patents. But, it nonetheless "decline[d] to determine whether UT would be judicially estopped from later filing suit against [Baylor] for the purposes of this Rule 19(b) analysis." *Id.* Finally, as to the fourth factor—whether Gensetix would have an adequate remedy if the action were dismissed for nonjoinder—the court found it "seemingly" weighed in favor of Gensetix. Regardless, the court "refused to effectuate a rescue" by joining UT, noting that, "[w]hile this result may be harsh, it is an inherent risk for anyone who chooses to contract with a sovereign entity." *Id.*

The parties argue at length about the facts applicable to each factor, but we need not delve into each argument to assess the appropriateness of the district court's analysis. We conclude that the district court abused its discretion by collapsing the multi-factorial Rule 19(b) inquiry into one dispositive fact: UT's status as a sovereign. For example, in evaluating the prejudice to UT, the district court relied on our decision in *A123* and concluded that it must give weight to the fact that the sovereign risked losing rights in

16          GENSETIX, INC. v. BAYLOR COLLEGE OF MEDICINE

its patent without an opportunity to defend itself. *Gensetix*, 354 F. Supp. 3d at 764. But in *A123*, we noted that the interests of the licensee and licensor were "overlapping" not "identical," because the licensee had only a field-of-use license. *A123*, 626 F.3d at 1221. We concluded that this left open the possibility of the licensee advancing arguments during litigation that served its own interests but not that of the absent licensor. *Id.* Here, as Gensetix correctly points out, it has a license in every field, and, as such, the parties' interests in the validity of the patents-in-suit are identical. Appellant's Br. 27. The prejudice to UT is minimal, or at least substantially mitigated, because, unlike the licensee in *A123*, Gensetix will adequately protect UT's interests in the validity of the patents-in-suit.

Likewise, the court dismissed the lack of an adequate remedy for Gensetix resulting from UT's nonjoinder—*i.e.*, the fourth Rule 19(b) factor—as simply "an inherent risk for anyone who chooses to contract with a sovereign entity." *Id.* That may be true, but this fact is more relevant to joinder under Rule 19(a) than it is to the Rule 19(b) analysis. Rather than cede control, once again, to UT's claim of sovereign immunity, the district court should have given weight to the fact that Gensetix is without recourse to assert its patent rights because UT cannot be feasibly joined. Accordingly, we conclude that the district court abused its discretion in giving overwhelming weight to UT's sovereign status to the exclusion of all other facts.

*Pimentel*, on which UT relies, does not compel a different conclusion. *Pimentel* involved an interpleader action commenced to determine ownership of property allegedly stolen by Ferdinand Marcos, the former President of the Philippines. In concluding that the action should not have proceeded in the Republic of Philippines' absence, the Supreme Court noted that a sovereign's immunity from suit is a "privilege [that] is much diminished if an important and consequential ruling *affecting the sovereign's substantial interest* is determined, or at least assumed, by a federal

court in the sovereign's absence and over its objection." *Pimentel*, 553 U.S. at 868 (emphasis added). The Court explained that, "where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered *where there is a potential for injury to the interests of the absent sovereign*." *Id.* at 867 (emphasis added). This seemingly broad language is best understood, however, within the specific facts of *Pimentel*. First, the case dealt with foreign sovereign immunity, not state sovereign immunity, and the Court placed some weight on the "[c]omity and dignity interests" at play. *Id.* at 869. No comity concerns exist here. Second, and more importantly, there was no dispute in *Pimentel* that the absence of the Philippines in the interpleader suit would result in its interests going unprotected. *Id.* at 863–64. By contrast, here, Gensetix is fully able (and willing) to step into UT's shoes and protect the absent sovereign's interests in the validity of the patents-in-suit. Indeed, in the license agreement, UT required that it do so. Finally, in *Pimentel*, the claim was not extinguished for lack of an alternative forum, unlike here.

In his dissent-in-part, Judge Taranto, respectfully, reads too much into *Pimentel*. We do not agree that the Court gave "controlling weight to the sovereign interest" in that case. In evaluating the first Rule 19(b) factor, the Court concluded that the district court and the Court of Appeals "gave insufficient weight to the likely prejudice to" the sovereign. *Id.* at 869. The Court nonetheless analyzed the remaining Rule 19(b) factors before concluding that the action must be dismissed. Rather than announcing a bright-line rule, the Court clarified that "Rule 19 cannot be applied in a vacuum, and it may require some preliminary assessment of the merits of certain claims." *Id.* at 868. It also made clear that in conducting "the Rule 19(b) inquiry, a court *must* examine, to some extent, the claims presented and the interests likely to be asserted both by the joined parties and the absent entities or persons." *Id.* (emphasis

added).  The deciding factor in *Pimentel* was the court giving insufficient, rather than controlling, weight to the likely prejudice to the sovereign.[9]  We conclude that a proper application of *Pimentel* mandates consideration of the claims presented and the interests asserted by UT, Gensetix, and Baylor—an analysis the district court failed to properly engage in.

Beyond giving controlling weight to UT's status as a sovereign in its analysis of several of the applicable factors, in concluding that a judgment rendered in UT's absence would be inadequate, the district court also refused to properly analyze the third Rule 19(b) factor.  In refusing to consider whether UT would be barred from filing suit against Baylor, such that there would be a risk of multiple suits, the court ignored its own express finding that, under the terms of the agreement, UT's right to sue is secondary, and it cannot initiate a lawsuit against Baylor now that Gensetix has done so.  Therefore, allowing the litigation to proceed in UT's absence does not pose a substantial risk of multiple suits.

---

[9]    We are likewise unpersuaded by that opinion's reference to decisions from two of our sister circuits in support of the assertion that a court must give "decisive weight" to a state's sovereign interest in conducting this analysis.  *See* Taranto Op. at 3–4 (citing, e.g., *Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1498 (D.C. Cir. 1995) and *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 858 (9th Cir. 2019)).  The cited cases either pre-date *Pimentel* or do not interpret it.  And, these cases do not present a situation, where, like here, one of the parties to the litigation has an interest in the subject matter of the litigation that is identical to the absent sovereign's interest, thereby mitigating the prejudice to the sovereign.

The proper analysis of the Rule 19(b) factors is far more nuanced than the district court's.  As to the prejudice to UT, the interests of UT and Gensetix are aligned.  Despite UT's sovereign status, given Gensetix's identical interest in the validity of the patents-in-suit, any prejudice to UT is greatly reduced.  There is also no risk of multiple suits because, under the express terms of the parties' agreement, UT may not sue Baylor once Gensetix has commenced litigation.  And, as an exclusive licensee with less than all substantial rights in the patents-in-suit, Gensetix cannot enforce its patent rights without the court allowing the suit to proceed in UT's absence.  Given this clear factual record, we conclude that it was an abuse of discretion to find that the suit may not proceed in UT's absence.  Accordingly, we reverse the district court on this point.

## III.  CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive.  For the foregoing reasons, we affirm-in-part, reverse-in-part, and remand for proceedings consistent with this opinion.

## AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED

### COSTS

Each party to bear its own costs.

# United States Court of Appeals for the Federal Circuit

---

**GENSETIX, INC.,**
*Plaintiff-Appellant*

**v.**

**THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM,**
*Plaintiff-Appellee*

**v.**

**BAYLOR COLLEGE OF MEDICINE, DIAKONOS RESEARCH LTD, WILLIAM K. DECKER,**
*Defendants-Appellees*

---

2019-1424

---

Appeal from the United States District Court for the Southern District of Texas in No. 4:17-cv-01025, Judge Andrew S. Hanen.

---

NEWMAN, *Circuit Judge,* concurring in part, dissenting in part, concurring in the judgment.

The panel majority holds that the Board of Regents of the University of Texas System ("the University" or "UT") has Eleventh Amendment immunity that shields it from involuntary joinder in this infringement suit against Baylor College of Medicine and others. Respectfully, I disagree.

The University is the assignee of the patents at issue, of which William K. Decker *et al.* are inventors. The University licensed the patents to Gensetix, Inc. for commercial development, with significant payments to the University. The "Patent And Technology License Agreement" grants Gensetix the exclusive right to make, use, and sell the patented subject matter for the life of the patents, and requires Gensetix to enforce the patents against any infringer. However, when Gensetix sought cooperation in this infringement suit, the University refused to join or be joined as a party, and invoked the Eleventh Amendment to bar involuntary joinder, thus preventing enforcement of the patents. The district court deemed the University to be a necessary party, and dismissed Gensetix's infringement suit.[1]

I respectfully dissent from the court's holding that the University has Eleventh Amendment immunity from joinder in this litigation. However, this infringement suit may proceed without the University as a party, in conformity with Federal Rule of Civil Procedure 19(b); thus I concur in the court's judgment.

### *The Eleventh Amendment does not insulate a State from its contractual obligations*

Just as the State must pay its bills, it also must comply with its contracts. The purpose of the Eleventh Amendment is to shield a State's sovereign functions of governance from judicial oversight in federal courts. *See* William A. Fletcher, *The Eleventh Amendment: Unfinished Business*, 75 Notre Dame L. Rev. 843, 854 (2000). When a State agency enters into commercial transactions, it is subject to the rules of commerce. As Justice Breyer explained in *College Savings Bank v. Florida Prepaid Postsecondary*

---

[1]    *Gensetix, Inc. v. Baylor Coll. of Med.*, 354 F. Supp. 3d 759 (S.D. Tex. 2018) ("Dist. Ct. Op.").

*Education Expense Board*, 527 U.S. 666 (1999): "When a State engages in ordinary commercial ventures, it acts like a private person, outside the area of its 'core' responsibilities, and in a way unlikely to prove essential to the fulfillment of a basic governmental obligation." *Id.* at 694 (Breyer, J., dissenting).

The Eleventh Amendment is not an authorization whereby State agencies may violate their commercial and contractual obligations. Its purpose is not to absolutely "prevent states from being compelled to litigate," as the district court stated. Dist. Ct. Op. at 766 (internal quotation marks omitted). The Supreme Court expressed this view in *Ex parte Young*, 209 U.S. 123 (1908), holding that even if the State is immune from suit on a particular issue, its officials may not be immune. *Id.* at 167. As a recent illustration, in *Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334 (Fed. Cir. 2006), this court explained that although the University of Arkansas may assert Eleventh Amendment immunity from suit for patent infringement, that University's officials can be sued. *Id.* at 1342.

Here, the University of Texas obtained United States patents on inventions of the University's scientists, and entered into an exclusive License Agreement with Gensetix for development and commercialization.[2] Paragraph 7.1 of the License Agreement provides that Gensetix "must enforce any patent exclusively licensed hereunder against infringement by third parties," and that if Gensetix does not do so within 6 months of learning of infringement, the University has the right to sue the infringer(s) and retain any

---

[2] "Section 3.1 of the License Agreement states that Gensetix has the 'exclusive' right to manufacture, use, import, and sell the licensed product within the 'licensed territory' (L.A. § 2.5: 'licensed territory means worldwide') for use within the 'licensed field' (L.A. § 2.2: 'licensed field means all fields of use.')." Dist. Ct. Op. at 770.

4          GENSETIX, INC. v. BAYLOR COLLEGE OF MEDICINE

recovery. License Agreement at 13–14. And Paragraph 7.2 of the License Agreement states that in any infringement action "the parties agree to cooperate fully with each other." License Agreement at 14.

The University now refuses such cooperation, by refusing to be named as a party to the suit, thereby preventing enforcement of the patents—although the License Agreement requires Gensetix to enforce the patents. The University not only violates its agreement to "cooperate fully," but also deprives its licensee of the agreed upon exclusivity. The University achieves this result by invoking the Eleventh Amendment.

This is not a matter of shielding the State from the "indignity" of judicial process, as in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996). When a State enters into commerce, it accedes to the rules of commerce. *See White v. Massachusetts Council of Const. Employers, Inc.*, 460 U.S. 204, 207 (1983) ("There is no indication of a constitutional plan to limit the ability of the States themselves to operate freely in the free market." (quoting *Reeves, Inc. v. Stake*, 447 U.S. 429, 436–47 (1980))).

I do not share the majority's conclusion that the Eleventh Amendment shields the University from compliance with its contractual obligation to "cooperate fully" with its exclusive licensee, Gensetix, in enforcing these patents against infringers.[3]

---

[3]    The Supreme Court recently reaffirmed "a principle as old as the Nation itself: The Government should honor its obligations. Soon after ratification, Alexander Hamilton stressed this insight as a cornerstone of fiscal policy. 'States,' he wrote, 'who observe their engagements . . . are respected and trusted: while the reverse is the fate of those . . . who pursue an opposite conduct.' Centuries later, this Court's case law still concurs." *Maine*

### *This infringement suit may proceed under Rule 19(b) without joinder of the University*

The district court held that the University, as patent assignee, is a necessary party to this infringement suit brought by its exclusive licensee. If the assignee is indeed a necessary party, in most situations it can be joined as a voluntary or involuntary party. However, if joinder is not available, the question is whether it is an indispensable party. *Dainippon Screen Mfg. Co. v. CFMT,* Inc., 142 F.3d 1266, 1272 (Fed. Cir. 1998).

The question of whether and when a licensee may sue infringers in its own name was elaborated in *Waterman v. Mackenzie*, 138 U.S. 252 (1891); the Court stated:

> The patentee or his assigns may, by instrument in writing, assign, grant, and convey, either (1) the whole patent, comprising the exclusive right to make, use, and vend the invention throughout the United States; or (2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and throughout a specified part of the United States. *Id.* § 4898. A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers. In the second case, jointly with the assignor. In the first and third cases, in the name of the assignee alone.

*Id.* at 255. Following the Court's holding in *Waterman*, a conveying of the "whole patent, comprising the exclusive

---

*Community Health Options v. United States*, 140 S. Ct. 1308, 1331 (2020) (ellipses in original) (quoting Report Relative to a Provision for the Support of Public Credit (Jan. 9, 1790), in 6 Papers of Alexander Hamilton 68 (H. Syrett & J. Cooke eds. 1962) (internal citations omitted)).

6          GENSETIX, INC. v. BAYLOR COLLEGE OF MEDICINE

right to make, use, and vend the invention throughout the United States" is tantamount to an assignment, and vests in the assignee "a right to sue infringers . . . in the name of the assignee alone." *Id.* However, the district court relied on *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir. 2010) to support holding that the University's default right to sue infringers if Gensetix did not do so, was a right so substantial that it defeated Gensetix's right to sue as exclusive licensee. Dist. Ct. Op. at 769–71.

Here, the issue is resolved not only by Federal Rule 19(b), but also by legal and equitable theories of property rights, such as the constructive trust described in *Independent Wireless Telegraph Co. v. Radio Corporation of America*, 269 U.S. 459, 468 (1926) (patent owner holds title in trust for exclusive licensee); or determining whether the license is "by way of mortgage and liable to be defeated by non-performance of a condition subsequent," as described in *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991) (holding that "the termination provisions in the agreements were entirely consistent with an assignment.").

Applying the principles of precedent to the Gensetix-University License Agreement, the default provision for suing infringers is consistent with the assignment of exclusive patent rights, whereby Gensetix may sue infringers in its own name when, as here, the University declines to join or be joined.

I join the court's ruling that this litigation may proceed without the University as a party, and concur in the application of Federal Rule 19(b).

### *The University's rights of scientific publication, research, and teaching are not patent rights*

In the district court, Baylor had moved for dismissal on the ground that "the only allegations of patent infringement in the Complaint were allegations of research activities." University Br. 5 n.1. The district court did not decide this motion, instead dismissing the action on the Eleventh Amendment ground.

The License Agreement states that the University has the right to "[p]ublish the general scientific findings from research," to use the subject matter for "academically-related purposes" such as "research, teaching, [and] patient care," and to transfer to "academic or research institutions for non-commercial research use." License Agreement at 5 (¶¶ 3.1(a), (b), (c)). The scientific/technologic information in patents is part of the balance in the Constitution's provision "To promote the Progress of Science and useful Arts," Art. I, § 8, cl. 8. As explained by Justice Story in *Sawin v. Guild*, 21 F. Cas. 554, 555 (C.C.D. Mass. 1813), this balance distinguishes "the making with an intent to use for profit, and not for the mere purpose of philosophical experiment, or to ascertain the verity and exactness of the specification." This principle has supported centuries of innovation.

The License Agreement's acknowledgement of scientific knowledge is not a reservation of patent rights, and was inappropriately held by the district court to comprise substantial retained patent rights and thus to support Eleventh Amendment immunity.

#### CONCLUSION

Although I do not agree with the court's holding that the University has Eleventh Amendment immunity from participation in this litigation, I do agree that this action may proceed in the absence of the University as a party.

8                    GENSETIX, INC. v. BAYLOR COLLEGE OF MEDICINE

Thus I join in holding that this infringement suit may proceed without joinder of the University, and in remanding for further proceedings.

# United States Court of Appeals
# for the Federal Circuit

---

**GENSETIX, INC.,**
*Plaintiff-Appellant*

**v.**

**THE BOARD OF REGENTS OF THE UNIVERSITY
OF TEXAS SYSTEM,**
*Plaintiff-Appellee*

**v.**

**BAYLOR COLLEGE OF MEDICINE, DIAKONOS
RESEARCH LTD, WILLIAM K. DECKER,**
*Defendants-Appellees*

---

2019-1424

---

Appeal from the United States District Court for the Southern District of Texas in No. 4:17-cv-01025, Judge Andrew S. Hanen.

---

TARANTO, *Circuit Judge,* concurring in part and dissenting in part.

I join Parts I and II-A of Judge O'Malley's opinion except for footnote 6. Those portions of the opinion conclude that the constitutionally preserved protection of state sovereign immunity bars a coerced joinder of the University of Texas (UT), which is an arm of the State of

Texas, as an involuntary plaintiff in this federal action, which Gensetix, Inc., as UT's exclusive licensee, initiated to assert infringement of UT-owned patents. I agree that joinder of UT under Federal Rule of Civil Procedure 19(a), even though UT is a "required" party under that provision, would improperly subject UT "to the coercive process of judicial tribunals at the instance of private parties." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996); *see Franchise Tax Board of California v. Hyatt*, 139 S. Ct. 1485, 1497 (2019).

I part company with Judge O'Malley's opinion in its conclusion, in Part II-B, that the district court erred in ruling that the infringement action should not proceed under Rule 19(b) without the presence of required-party UT. For that reason, I dissent from the majority's reversal of the district court's dismissal of the action. The Supreme Court's decision in *Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008), explains that when a sovereign entity is a required party under Rule 19(a), is protected against joinder by sovereign immunity, and makes a non-frivolous assertion that it will be prejudiced by a suit proceeding in its absence, a district court is generally obligated to dismiss the suit under Rule 19(b). Because UT made such an assertion, I see no abuse of discretion in the district court's dismissal of this action, which I would affirm.

I

In *Pimentel*, the Supreme Court considered whether a federal-court action may proceed, under Rule 19(b), without the presence of a sovereign entity that was a "required" party under Rule 19(a) but that could not be joined because of sovereign immunity. 553 U.S. at 863. The Court recognized that it "ha[d] not considered a case posing the precise question presented," but it noted that there were "some authorities involving the intersection of joinder and the governmental immunity of the United States." *Id.* at 866. The "analysis of the joinder issue in

those cases"—*Mine Safety Appliances Co. v. Forrestal*, 326 U.S. 371 (1945) and *Minnesota v. United States*, 305 U.S. 382 (1939)—"was somewhat perfunctory," the Court wrote, "but the holdings were clear: A case *may not proceed* when a required-entity sovereign is not amenable to suit." *Pimentel*, 553 U.S. at 866–67 (emphasis added).

Based on those holdings, the Court in *Pimentel* stated its conclusion in the following bright-line-rule terms: "where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action *must be ordered* where there is a potential for injury to the interests of the absent sovereign." *Id.* at 867 (emphasis added). The Court stated that rule, as it stated its summary of the earlier holdings, in terms of an immunity-protected "sovereign" generally, not only a foreign sovereign or the United States. Moreover, the Court's statement that "dismissal of the action must be ordered" lacks a qualifier allowing for other Rule 19(b) factors to outweigh the protection of a sovereign's non-frivolous interest. Although the Court discussed such other factors, the discussion gives controlling weight to the sovereign interest. *Id.* at 869–72.

Consistent with *Pimentel*, at least two federal courts of appeals have mandated, or at least approved, giving decisive weight under Rule 19(b) to avoiding impairment of a sovereign interest in the contexts of sovereign immunity of States and Indian tribes. In a case involving state sovereign immunity, the D.C. Circuit concluded, before *Pimentel*, that "[w]hile Rule 19(b) sets forth four non-exclusive factors . . . 'there is very little room for balancing of other factors' set out in Rule 19(b) where a necessary party under Rule 19(a) is immune from suit because immunity may be viewed as one of those interests 'compelling by themselves.'" *Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1496 (D.C. Cir. 1995) (quoting *Wichita & Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 777 n.13 (D.C. Cir. 1986)). In a case involving tribal

4          GENSETIX, INC. v. BAYLOR COLLEGE OF MEDICINE

sovereign immunity, the Ninth Circuit observed, before *Pimentel*, that "some courts have held that sovereign immunity forecloses in favor of tribes the entire balancing process under Rule 19(b)." *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1025 (9th Cir. 2002). More recently, the Ninth Circuit reiterated that "there is a 'wall of circuit authority' in favor of dismissing actions in which a necessary party cannot be joined due to tribal sovereign immunity—'virtually all the cases to consider the question appear to dismiss under Rule 19, regardless of whether [an alternate] remedy is available, if the absent parties are Indian tribes invested with sovereign immunity.'" *Dine Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*, 932 F.3d 843, 857 (9th Cir. 2019) (citing *White v. University of California*, 765 F.3d 1010, 1028 (9th Cir. 2014)).

I see neither authority nor a persuasive basis for excluding *state* sovereign immunity from the *Pimentel* rule, which, as noted, the Supreme Court stated in terms covering immunity-protected sovereigns generally. In any event, and what suffices for the present case, I see no authority or good reason for prohibiting a trial court from giving controlling effect to the protection of a state sovereign's non-frivolous interest from impairment by litigation in its absence when the state sovereign is a required party under Rule 19(a).

II

Whether a suit can proceed without an absent, required party is a "matter of regional circuit law." *University of Utah v. Max-Planck-Gesellschaft zur Forderung der Wissenschaften E.V.*, 734 F.3d 1315, 1320 (Fed. Cir. 2013). The Fifth Circuit reviews such a determination for an abuse of discretion. See *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 520 (5th Cir. 2010) ("Rulings on the joinder of parties are reviewed for abuse of discretion."). A district court "abuses its

discretion when it makes 'a clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings.'" *Thermolife International LLC v. GNC Corporation*, 922 F.3d 1347, 1356 (Fed. Cir. 2019) (citing *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017)).

Here, it suffices, to find no abuse of discretion, that UT has made a non-frivolous claim that its interests as patent owner could easily be harmed—by, *e.g.*, narrow-scope rulings or invalidation—if the suit proceeds in its absence. *See* Brief for University of Texas at 32–33 ("UT would risk an invalidation of its patents without the opportunity to litigate"); *id.* at 34 ("In its filing below, UT pointed out the invalidation risk as well as the risk that the 'construction of those claims [] will impact the value of the patents.'" (citing J.A. 628)).

It is not disputed on appeal that UT retained substantial rights in the asserted patents, as the district court concluded. *Gensetix, Inc. v. Baylor College of Medicine*, 354 F. Supp. 3d 759, 768–71 (S.D. Tex. 2018). The district court noted that "UT retains a broad right to sue and control litigation"; that UT "retained the right to publish general findings, use licensed subject matter for research, teaching, or other academic purposes, and transfer rights to other research institutions for non-commercial research use"; and that Gensetix's rights "are subject to termination provisions." *Id.* at 770–71. Moreover, the district court observed, "UT and Gensetix share a financial interest in litigation because if Gensetix initiates an infringement suit, both entities are entitled to recovery." *Id.* at 771. UT thus has a substantial interest in maintaining the value of the patents.

It is far from frivolous to assert that UT's interest could be impaired by an invalidity ruling or a narrow claim construction. The doctrines of claim and issue preclusion

6        GENSETIX, INC. v. BAYLOR COLLEGE OF MEDICINE

might prevent UT from relitigating such adverse rulings made in this suit, given that the UT-Gensetix license agreement designates Gensetix as UT's representative in infringement litigation, J.A. 314–15. *See* Restatement (Second) of Judgments § 41 (a "person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of judgment as though he were a party"). In any event, a ruling that the patents' claims are invalid or are narrow in scope would be harmful at least as adverse precedent. In *A123 Systems, Inc. v. Hydro-Quebec,* another case involving UT, we relied on *Pimentel* and affirmed the district court's conclusion that "were it to reinstate the action and declare the patents invalid, UT would lose all rights in its patents despite the fact that it had no opportunity to defend its interests in the litigation." 626 F.3d 1213, 1221 (Fed. Cir. 2010). Accordingly, we were obligated to "give sufficient weight to the prejudice to UT." *Id.* The same is true here.

This conclusion suffices to affirm the district court's dismissal of the present action as not an abuse of discretion. I have no reason to doubt that this result leaves Gensetix without any forum to press the infringement claims it has presented in this action. (Whether Gensetix may sue UT for breach of contract is a separate matter.) But in *Pimentel,* the Court expressly noted that "[d]ismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims" and that such a "result is contemplated under the doctrine of foreign sovereign immunity." 553 U.S. at 872; *see also Wichita & Affiliated Tribes,* 788 F.2d at 777 (stating that "dismissing an action where there is no alternative forum" is "less troublesome" when dismissal is compelled by sovereign immunity because the loss of forum results not from "some procedural defect such as venue" but from "the fact that society has consciously opted to shield [sovereigns] from suit without . . . consent"). More generally, the Supreme Court's state

sovereign immunity jurisprudence contemplates that patent owners may be left without a remedy when States are involved. *See Allen v. Cooper*, 140 S. Ct. 994, 1001 (2020).

Because UT made a non-frivolous assertion that it will be harmed if this suit proceeds, I would hold that the district court did not abuse its discretion by dismissing the suit. I respectfully dissent from the judgment of the court reversing the district court's decision.